## THE PEOPLE v. DE THOMAS.

### APPEAL from the District Court of Humacao.

No. 36.—Decided December 19, 1905.

APPEAL—EVIDENCE—STATEMENT OF FACTS—BILL OF EXCEPTIONS.—In order that the Supreme Court may consider upon appeal the findings upon the evidence, it is necessary that the same should be submitted to its consideration by means of a statement of facts or a bill of exceptions.

VOLUNTARY MANSLAUGHTER—ACCESSORY—PROPER PUNISHMENT.—The provisions of section 18 of the Penal Code, govern the punishment which should be imposed upon persons convicted as accessories to the crime of voluntary manslaughter, because the Penal Code does not contain any other provision fixing any special punishment for an accessory to such a crime.

ID.—PUNISHMENT IMPOSED UPON ACCUSED.—Where the evidence introduced on the trial is not properly submitted for the consideration of the Supreme Court, it cannot decide whether the judge of the trial court abused the discretionary powers conferred upon him by law to impose punishment upon the accused.

ID.—The Supreme Court has jurisdiction to correct abuses by district judges in imposing punishment upon the accused, but in order that the Supreme Court may exercise such jurisdiction, it is necessary that the abuses should be manifest, clear and tangible.

ID.—EXTENUATING CIRCUMSTANCES. — Where extenuating circumstances exist, which should be taken into consideration in pronouncing sentence, the accused should submit the same to the consideration of the trial court in the manner provided for by the provisions of sections 320 and 321 of the Code of Criminal Procedure, and in this way they may afterwards be set forth in a statement of facts and duly submitted to the consideration of the appellate court.

ID.—Where nothing to the contrary appears in the record, it will be presumed
that the judge of the trial court has wisely and correctly exercised the dis-
cretionary powers conferred upon him by law in fixing the punishment
which should be imposed upon the accused.

The facts are stated in the opinion.

Mr. *José de Guzmán Benítez* for appellant.

Mr. *Rossy, fiscal,* for respondent.

MR. JUSTICE HERNANDEZ delivered the opinion of the court.

In this cause, the appellant, José de Thomas, was charged
in the District Court of Humacao with the crime of murder
in the first degree, committed as follows:

"On or about the night of November 21, 1904, in the city of
Humacao, the seat of the district of the same name, the defendant,
José de Thomas, with malice aforethought and treachery, unlawfully
killed Angel Romero *alias* Niní by shooting him in the left orbitary
region with a revolver."

This information was duly sworn to by the *fiscal,* who
signed it, on January 9th of the current year, and upon ar-
raignment José de Thomas entered a plea of not guilty.

The trial having been held before a jury, the latter re-
turned a verdict of guilty against José de Thomas as an acces-
sory to the crime of voluntary manslaughter, and the Huma-
cao court, on March 25th last, pronounced judgment sentenc-
ing the defendant, José de Thomas, convicted as an accessory
to the crime of voluntary manslaughter to be confined in the
penitentiary of San Juan, Porto Rico, for seven years, at
hard labor, and to pay the costs of the trial.

Counsel for the defendant took an appeal from this judg-
ment, which was perfected in this Supreme Court by his at-
torney, José de Guzmán Benítez who expressly stated that
he did not attack the trial, nor the evidence introduced, nor
the verdict; the appeal being based solely upon an error of
law committed in imposing on the defendant the maximum
penalty prescribed by section 18 of the Penal Code for ac-
cessories of all kinds; that is to say, imprisonment in the pen-
itentiary for seven years, thus violating the letter and spirit

of sections 3, 11, 12, 18 and 28 of the Penal Code, 284 and 286 of the Code of Criminal Procedure, and the principles established in the jurisprudence of the courts of the United States in the matter of judicial discretion.

The following grounds are alleged in support of the appeal:

"1. That the responsibility of the accessory, José de Thomas, should be weighed in relation with the acts of Policeman Pedro María Rodríguez, who caused the death of Angel Romero, and in relation with the intent and acts of José de Thomas himself, which determine his complicity in the crime, it is neither just nor equitable to attribute to the liability of the accessory a greater scope than that given to the liability of the principal—that is to say, Policeman Rodríguez; and as the homicide of which the latter was convicted was excusable, according to the evidence heard at the trial, owing to his having acted in the exercise of his functions as a guardian of the public peace, in the defense of his person and in the performance of his duties, the complicity of José de Thomas was excusable also, he having done nothing but to exchange his revolver for that of the policeman and conceal said policeman's revolver in the water closet of the house of Jova González, prompted by an impulse of generous inexperience and without any intention of prejudicing the interests of any person whatsoever.

"2. That section 18 of the Penal Code establishes a scale of penalties under which accessories to felonies are punishable by one to seven years' confinement in the penitentiary, and it is the intention of the law that the penal liability of an accessory be governed by the gravity of the crime, said article is not properly construed when it applies to the accessory to the crime of voluntary manslaughter the maximum penalty applicable at the utmost to an accessory to a murder in the first degree, because section 3 of the Penal Code provides that all the provisions and sections thereof are to be construed according to the fair construction of their terms, with a view to effect its object and to promote justice. Nor is it equitable to apply to an accessory to an excusable homicide, as was that of Angel Romero, a penalty almost equal to the maximum fixed by the law for a principal to the crime of voluntary manslaughter without extenuation of any kind.

"3. That the jury, having the power, according to sections 284 and 286 of the Code of Criminal Procedure, to find the degree of guilt of a defendant, courts of justice cannot ignore the classification

made in the verdict of the jury, nor can they impose a penalty differ-
ing from that which it was the intention of the jury should be im-
posed on the defendant, and much less aggravate the liability of the
latter by sentencing him to suffer a punishment corresponding to a
higher classification or degree than that fixed in the verdict, as has
occurred in this case, in which, against the intention of the jury that
José de Thomas should be punished as an accessory to the crime of
voluntary manslaughter, he was punished as an accessory to the
crime of murder in the first or second degree, and sentenced to suffer
the maximum penalty fixed in the scale of section 18 of the Penal
Code; for this reason the sentence does not conform to the verdict of
the jury; it punishes the defendant as guilty of a more serious crime
than that of which he had been cleared by said verdict; it contro-
verts the constitutional principle that trials for all crimes, excepting
cases in which public officials are defendants, shall rest with the jury;
and it contravenes the principle recognized by the jurisprudence of
almost all of the States of the American Union, that when the verdict
of the jury finds a defendant guilty of a crime in a lower degree than
that charged in the information, the defendant is cleared of any de-
gree higher than that found in the verdict, and cannot be guilty of a
more serious crime involving the same act, or be again put in jeop-
ardy, and still less punished for the crime or classification of liability
of which he has been cleared.

''4. That although there exists the principle of judicial discretion
which empowers the adjudging court to impose the penalty it may
deem proper within the limits prescribed for each crime by the Penal
Code, such principle cannot be carried to extremes without unsettling
the stability of the law, the administration of justice and the rights
of citizens, and it never authorizes an abuse of such discretion, which
must be exercised while taking into consideration the provisions es-
tablished in the law, and respecting the mandates of the latter and
not the will of the judge.

Counsel for the appellant closes his brief with the allega-
tion that the judgment appealed from violated the Constitu-
tion and the legal provisions above cited; that this court has
jurisdiction to hold, under the verdict of the jury, and in
view of the record of the trial that the voluntary manslaugh-
ter of Angel Romero is justifiable and is justified on account
of being included under the cases specified by sections 207 and
208 of the Penal Code; that as the principal to the crime, the

policeman, Pedro Maria Rodriguez, has not even been accused, not being punishable under the circumstances, the accessory to said crime cannot be punished either; and he prays for the reversal of the judgment rendered and alleges that the voluntary manslaughter of Angel Romero being justified, no penal liability attaches to the defendant José de Thomas on account of his complicity therein, and that, therefore, the latter has not committed a punishable act and should be set at liberty forthwith.

The *fiscal* opposed the appeal both by brief and oral argument, and prayed for its dismissal on the ground that the application of section 18 of the Penal Code is within the discretion of the judge, and that there is no law whatsoever restricting that discretional power.

The transcript of the record before us does not contain any bill of exceptions, or statement of facts, the result of the evidence heard at the trial being shown only in a summarized form by the verdict of the jury.

Let us now examine the legal questions submitted to judicial decision in the brief submitted to this court by the appellant.

To ascertain the facts which led to the judgment appealed from by José de Thomas, we must go to the information by which said de Thomas was charged with the crime of murder in the first degree committed on the person of Angel Romero. In this information no mention is even made of the insular policeman, Pedro María Rodríguez, and as the transcript of the record which the court has before it does not contain any statement of facts fixing and determining the result of the evidence heard at the trial, we do not know whether Pedro María Rodríguez had any punishable or excusable intervention in the death of Angel Romero, and, what is more, neither do we know the acts which implicated José de Thomas in said death. Therefore we cannot discuss whether the killing of Angel Romero was excusable on the part of the author thereof to us unknown, but, on the contrary, in view of the verdict

of the jury, we must assume that it was punishable, because there can be no punishable complicity in an excusable homicide. Nor is it possible to discuss whether or not the complicity of José de Thomas was excusable, because apart from the fact that the jury found him guilty of voluntary manslaughter as an accessory, and that its verdict has not been attacked on the ground that it was contrary to the law or the evidence, the appellant himself has stated in this court that he has no objection to make to the trial, the evidence or the verdict, and that he had appealed from the judgment only on account of the sentence imposed, although this statement is in contradiction of the prayer he makes in his brief that the crime of voluntary manslaughter committed upon the person of Angel Romero be held to have been justified, and, consequently, that he be set at liberty on the ground that he had not committed any punishable act.

José de Thomas, having been found guilty of being an accessory to the crime of voluntary manslaughter committed on the person of Angel Romero, there is a legal presumption that the jury so held him to be an accessory in accordance with section 37 of the Penal Code, which reads as follows:

"All persons who, after full knowledge that a felony has been committed, conceal it from the proper authorities, or harbor and protect the person charged with or convicted thereof, are accessories."

The punishment which may be imposed upon accessories is fixed in section 18 of said Code, as follows:

"Except in cases where a different punishment is prescribed, an accessory is punishable by imprisonment in the penitentiary not exceeding seven years, or in jail not exceeding two years, or by fine not exceeding $5,000."

Said section 18 is applicable to this case, as we do not find in the Code any special punishment fixed for accessories to the crime of voluntary manslaughter. Nor do we find any legal provision whatsoever regulating the extent or amount

of the punishment, which could serve as a guide to the courts in applying section 18, although sections 27 and 28 impose upon courts the obligation of fixing the penalty corresponding to each case.·

These two articles read as follows:

"The several sections of this Code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed. ·

"Whenever in this Code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by the court authorized to pass sentence, within such limits as may be prescribed by this Code."

The District Court of Humacao, in fixing the punishment of José de Thomas as an accessory to the crime of voluntary manslaughter at seven years in the penitentiary, applied the two legal provisions cited, and acted within the limits prescribed by section 18, above transcribed.

We do not doubt that judges in each special case, in exercising the discretional power which the law vests in them, must consider the greater or lesser gravity of the case and the attendant circumstances, and endeavor to secure the greatest equality possible between the punishable act and the penalty, in order that the scales of justice may remain evenly balanced.

We understand that cases may arise in which an abuse of such discretional power may be revealed in an evident manner, as would be the case if the accessory to the crime were given a punishment equal or greater than that inflicted upon the principal thereof, and if, extenuating circumstances being proved, the maximum penalty were imposed on the accused.

But in this case, the punishment imposed upon José de Thomas is lower than the maximum of ten years established for the crime of voluntary manslaughter of which he was found guilty as an accessory, and the circumstances of the complicity of Thomas not having been shown in this Supreme

Court, we have no ground upon which to base an affirmation to the effect that the Humacao judge abused the discretional power vested in him by law.

It is not that this appellate court lacks jurisdiction to correct abuses of discretional power, but such abuses must be manifest, clear and tangible, in order that such jurisdiction may be exercised, which is not the case herein.

It is true that it is the duty of the jury to convict or acquit the defendant of the crime with the commission of which he is charged in the information, and to determine, in a proper case, the degree of the crime committed, and it is also clear that the judge cannot go beyond the verdict of the jury in imposing the penalty; but it is no less true, according to the sections of the Penal Code transcribed, that it is the duty of the judge, and not of the jury, to fix the punishment within the limits prescribed by the law, and that the Humacao judge did fix the punishment taking as a basis the verdict of the jury, without going beyond such limits.

Before concluding, we must quote in support of our opinion section 320 of the Code of Criminal Procedure, which reads as follows:

"After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

If there were any extenuating circumstances to submit to the Humacao court for the imposition of the punishment, counsel for the defendant should have made use of the right given him by the section transcribed, and then the provisions of the following section could have been applied for the establishment of such extenuating circumstances, thus affording

an adequate means of bringing them before this court by means of a statement of facts.

Counsel for José de Thomas did not do this, and under these circumstances the discretional power must be held to have been exercised properly and wisely, in the absence of any indication in the record that an improper use of such power was made.

The information against José de Thomas, the verdict of the jury, and the sentence pronounced in relation with sections 18, 27 and 28 of the Penal Code, do not prove an abuse of the discretional power and the record does not show in an authentic manner the evidence adduced at the trial which was taken into consideration by the trial judge to determine the greater or lesser perversity shown by José de Thomas, the accessory to the crime of voluntary manslaughter.

It is true that upon an accessory to a murder in the first or second degree a heavier penalty than that imposed on José de Thomas could not be imposed; but in the same way as extenuating circumstances might be present with regard to an accessory to the said crime, of such character as to lead the judge under his discretional power, to reduce the punishment of seven years in the penitentiary, so also could there have been present in the case at bar such aggravating circumstances as to justify the application of the penalty imposed.

We repeat that no abuse of the discretional power has been shown in this appellate court, and the burden of such proof is on the appellant.

For the reasons stated, in our opinion, the judgment rendered by the Humacao court on March 25th last should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Quinones, and Justice Wolf concurred.